J-A06041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY CHARLES CROUSE | : | |
| | : | |
| Appellant | : | No. 1461 WDA 2024 |

Appeal from the Judgment of Sentence Entered October 28, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006488-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY CROUSE | : | |
| | : | |
| Appellant | : | No. 1462 WDA 2024 |

Appeal from the Judgment of Sentence Entered October 28, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005508-2020

BEFORE: OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED: June 9, 2026**

In these consolidated cases, Anthony Crouse ("Crouse") appeals from the judgment of sentence imposed by the Allegheny County Court of Common Pleas ("trial court") following the revocation of his probation. He contends that the trial court abused its discretion in imposing an aggregate sentence of

thirty-two to sixty-four months of incarceration at a state correctional institute, followed by two years of probation. Upon review, we affirm.

On January 20, 2021, Crouse, who suffers from drug addiction, entered guilty pleas in two criminal cases in exchange for the Commonwealth's reduction of grading and withdrawal of certain charges. Crouse's plea enabled him to participate in the Allegheny County Drug Court ("Drug Court"), which is a treatment court with specialized jurisdiction over drug-related cases.[1] *See* 42 Pa.C.S. § 916. At docket number 2020-06488, Crouse pled guilty to retail theft as a first-degree misdemeanor[2] in connection with his theft of two cans of Red Bull from a grocery store in May 2020. At docket number 2020-05508, Crouse pled guilty to criminal trespass (a felony), theft by unlawful taking (a misdemeanor), and possession of controlled substances (a misdemeanor),[3] all stemming from an August 2020 incident wherein he entered a detached garage to steal tools inside. He received no penalty for possession, and for the remaining counts the trial court immediately sentenced Crouse to concurrent terms of thirty-six months of probation with

---

[1] Defendants who participate in Drug Court undergo substance abuse treatment in lieu of incarceration, with progress reviewed at periodic hearings. *See* Fifth Judicial District of Pennsylvania, "Drug Court," available at https://www.alleghenycourts.us/criminal/departments/problem-solving-courts/drug-court/ (last visited May 14, 2026).

[2] 18 Pa.C.S. § 3929(a)(1).

[3] *Id.* §§ 3503(a)(1)(i), 3921(a); 35 P.S. § 780-113(a)(16).

restrictive conditions supervised by the Allegheny County Probation Office. His probation conditions included undergoing electronic monitoring for thirty-six months, immediately participating in a substance abuse treatment program and complying with treatment recommendations, submitting to random drug testing, and participating in a criminality group.

Throughout his time on probation, the trial court repeatedly issued bench warrants and detained Crouse for alleged probation violations, but the certified record is devoid of petitions to revoke or orders indicating what occurred. The sole exception to the latter is a January 22, 2024 order revoking his probation and resentencing him to a fresh term of probation at both dockets, resulting in a new aggregate sentence of thirty-six months of probation with restrictive conditions. His conditions included electronic monitoring and complying with the rules and conditions of the Drug Court program and county probation.

After the January 2024 resentencing, the trial court issued a bench warrant for probation violations on May 2, 2024. Crouse was apprehended and detained on May 3, 2024, after testing positive for, and eventually admitted using, cocaine. N.T., 7/22/2024, at 2-3. He was released from jail straight into treatment. *Id.* at 3. On June 27, 2024, he left the treatment center against medical advice and without the probation department's knowledge of his whereabouts, resulting in the issuance of another bench

warrant that same day. ***Id.*** He remained an absconder until he was arrested on July 2, 2024. ***Id.***

At the hearing held on July 22, 2024, Allegheny Probation Officer Ashley Tuzikow recommended that the trial court revoke Crouse's participation in Drug Court, noting that Crouse had been participating in the program since 2021 without success. ***Id.*** at 3-4. Allegheny County Probation Officer Dave Havaran agreed, noting that Crouse struggled in the program, continually absconded from treatment, and repeatedly tested positive for drugs. ***Id.*** at 4. When the trial court asked defense counsel for Crouse's position, counsel replied that his client was "ready to move on as well." ***Id.*** The trial court announced that it would revoke Crouse out of Drug Court, order a presentence investigation report ("PSI"), and sentence him at a later date. ***Id.***

Before the next hearing, the Commonwealth compiled a probation violation report, which listed Crouse's technical violations as (1) being a danger to himself or others; (2) failing to be of good behavior; (3) failing to comply with the court's special order; (4) failing to refrain from using illicit drugs; and (5) non-participation in court-ordered rehabilitation. Probation Violation Report, 10/24/2024, at 3. It detailed Crouse's history on probation, describing a continuous cycle of participating in inpatient treatment followed by relapses. ***Id.*** at 4-5. While he successfully completed treatment at times, his sobriety did not last once he was released to electronic monitoring, halfway or three-quarters houses, or community residential rehabilitation; other

times, he was discharged for violating the facility's rules, relapsing, or leaving against medical advice. *Id.* According to the probation violation report, this behavior led to many violations of his conditions of probation and repeated warrants for his arrest. *Id.*

At a hearing on October 28, 2024, the court proceeded immediately to resentencing.[4] Crouse's counsel asked the trial court to consider that Crouse had not been convicted of further crimes while on probation and emphasized that his original convictions related to the theft of two cans of Red Bull worth $3.28 each and entry into a detached garage, not a person's house. N.T. 10/28/2024, at 4, 6. He described mitigating circumstances, including Crouse's diagnosed mental health conditions, one of which developed following his sexual victimization by a childhood friend's older relative. *Id.* at 5-6. Despite his overall lack of success, counsel highlighted Crouse's completion of the Full Hope program in its entirety and his productive use of his time in jail participating in several classes. *Id.* at 5. Counsel emphasized Crouse's acknowledgement that he "messed up," and noted Crouse's gratitude for his opportunity to participate in Drug Court as well as Crouse's belief that he would not be alive if not for the opportunity. *Id.* at 6.

_____

[4] The hearing was classified as a *Gagnon II* hearing on the docket, but the actual hearing appeared to pertain to resentencing only. *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973). Crouse does not raise any issues concerning the procedure of his revocation pursuant to *Gagnon* or otherwise.

In addition to the arguments counsel placed on the record, the PSI revealed that Crouse struggled with substance abuse since the age of twenty-one; he had experienced several significant personal losses, including the death of his grandfather who served in a paternal role during his childhood, the overdose death of his wife in 2017, and the loss of several other family members and friends to a drug overdose and suicide; his shared custody of his twelve-year-old daughter; his family support; prescribed medication for his mental health; he largely was unemployed; he struggled with his physical health; his criminal conviction record dating back to 2007; and his admission to at least five treatment facilities during his time in Drug Court. *See generally* PSI, 10/15/2024.

Tuzikow testified next, directing the court's attention to the long list of violations in the report before the court and offering to testify about them in detail if needed. N.T., 10/28/2024, at 8. She explained that Crouse "has had ... the most chances of any participant" she has worked with in Drug Court, and that the Drug Court team "worked tirelessly to help" Crouse, but he never progressed into the program's second phase since joining in 2021. *Id.* His team gave him chance after chance and worked to keep him out of jail despite violations that repeatedly landed him in jail. *Id.* She credited him for his ability to complete treatment programs, but because he would relapse almost immediately upon leaving the programs, she testified that it was very difficult to supervise him on the streets because he immediately put himself in danger.

*Id.* at 8-9.    According to Tuzikow, his "behaviors had become more aggravated" over the past year and his relapses had become more frequent. *Id.* at 9.    Additionally, he had difficulty getting into treatment programs because of his physical health conditions that were likely caused by his substance abuse.    *Id.*    Tuzikow pointed out that Crouse had wanted to "revoke himself" from Drug Court in January but the team continued to work with him.    *Id.* At this point, however, Tuzikow recommended confinement. *Id.* at 10.

During his allocution, Crouse admitted that he "did have a little problem using" because he was "overwhelmed a lot" and could not "think straight," and he "caused trouble." *Id.* at 9-10.  He expressed his wish to go home and help his mother with an illness.  *Id.*

The trial court then told him frankly, "Look, Mr. Crouse, the problem is you have been in since January of 2021 and you never made it past phase 2. There's nothing more I can do for you because for whatever reason it's not working." *Id.* at 11.  The court then sentenced him to an aggregate term of thirty-two to sixty-four months of incarceration at a state correctional institute, followed by two years of probation.  The trial court ordered him to undergo evaluations for mental health and drug and alcohol evaluation and to follow recommendations.  *Id.* at 12.  Finally, it revoked him from the Drug Court program.

Crouse filed a post-sentence motion, arguing that although he had a prior record score of five, his "criminal history is indicative of an individual struggling with serious mental health and addiction issues over an extended period." Post-Sentence Motion, 11/4/2024, ¶ 12. He acknowledged "technical violations, multiple EHM issues, and relapses," but argued that he continually resumed abiding by directives and tried hard to get clean at treatment, again highlighting his mental health struggles. *Id.,* ¶¶ 16-18. He asked the court to modify his sentence to run the sentences concurrently or to shorten the sentence for his retail theft conviction based upon the small scale of the theft at issue. *Id.*, ¶ 20. By written order, the trial court denied the motion.

Crouse timely appealed. Both Crouse and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. Crouse asks this Court to decide whether the trial court abused its discretion by imposing an unreasonable, non-individualized aggregate sentence to punish him for the serious nature of Crouse's violation behavior without considering his personal history, character, and treatment and rehabilitative needs as required by section 9721(b). *See* Crouse's Brief at 8, 24.

This claim challenges the discretionary aspects of his sentence. "An appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission." *Commonwealth v. Kalichak*, 943 A.2d 285, 289

(Pa. Super. 2008). An appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by: (1) timely filing a notice of appeal; (2) properly preserving the issue at sentencing or in a post-sentence motion; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed is not appropriate under the Sentencing Code. *Commonwealth v. Schroat*, 272 A.3d 523, 527 (Pa. Super. 2022). To raise a substantial question, a defendant must advance a colorable argument that the sentence is inconsistent with a specific provision of the Sentencing Code, contrary to the fundamental norms underlying the sentencing process, or otherwise incongruent with 42 Pa.C.S. § 9781(b).

Crouse satisfied all requirements for invoking our jurisdiction. He timely appealed. He preserved the argument he raises before us in his post-sentence motion.[5] His brief includes a Rule 2119(f) statement presenting a substantial

---

[5] The Commonwealth argues that Crouse waived his appellate issue by not preserving the same issue in his post-sentence motion. Commonwealth's Brief at 16. The Commonwealth is correct that the mere filing of a motion does not preserve a challenge to the discretionary aspects of sentence for appeal; instead, the appellant must afford the trial court the opportunity to address the factual and legal basis of the issue in the first instance. *See Commonwealth v. Rivera*, 238 A.3d 482, 499 (Pa. Super. 2020) (concluding appellant waived discretionary aspects challenge by presenting the same general legal theories with different rationales below). While we agree that Crouse's post-trial motion frames the issue a bit differently, there is enough substantive overlap between his arguments to address his claim on the merits.

question for our review. *See Commonwealth v. Reid*, 323 A.3d 26, 30 (Pa. Super. 2024) (determining that a claim that the trial court sentenced based solely on the seriousness of the offense without considering all section 9721 factors raises a substantial question); *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) ("Appellant's challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question."). As such, we proceed to review his appellate issues on the merits.

Imposing a new sentence following the revocation of probation is within the sound discretion of the sentencing court. *See Commonwealth v. Starr*, 234 A.3d 755, 760-61 (Pa. Super. 2020). Absent an abuse of that discretion, we will not disturb the resentence on appeal. *Id.* "An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted).

> We emphasize a trial court does not necessarily abuse its discretion in imposing a seemingly harsher post-revocation sentence where the defendant received a lenient sentence and then failed to adhere to the conditions imposed on him. In point of fact, where the revocation sentence was adequately considered and sufficiently explained on the record by the revocation judge, in light of the judge's experience with the defendant and awareness of the circumstances of the probation violation, under the appropriate deferential standard of review, the sentence, if

within the statutory bounds, is peculiarly within the judge's discretion.

*Commonwealth v. Pasture*, 107 A.3d 21, 28 (Pa. 2014) (citation omitted).

In addition to the abuse of discretion standard, our review is confined by section 9781(c) and (d) of the Sentencing Code:

> **(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> > (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> >
> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
> >
> > (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:
>
> > (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
> >
> > (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> >
> > (3) The findings upon which the sentence was based.
> >
> > (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c), (d).

Following the revocation of probation, a trial court has available to it the same sentencing alternatives "as were available at the time of initial

sentencing, due consideration being given to the time spent serving the order of probation." *Id.* § 9771(b); *see also id.* § 9721(a) (directing court to consider and select one or more sentencing alternatives to impose consecutively or concurrently, including an order of probation, a determination of guilt without further penalty, partial or total confinement, and a fine). It is limited only "by the maximum sentence that it could have imposed originally at the time of the probationary sentence." *Pasture*, 107 A.3d at 27-28; *but see* 42 Pa.C.S. § 9771(c) (setting forth limitations on a trial court's discretion to sentence a probation violator to a period of incarceration, discussed below).

Additionally, the court must abide by the considerations for imposing a sentence of total confinement set forth in section 9721(b). *Commonwealth v. Derry*, 150 A.3d 987, 994 (Pa. Super. 2016); *see* 42 Pa.C.S. § 9721(b) (directing court to consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant when imposing a sentence of total confinement). The court must state on the record the reasons for the sentence imposed following revocation, *see* Pa.R.Crim.P. 708(D)(2), but its explanation need not be as elaborate as the initial sentencing. *Pasture*, 107 A.3d at 27-28.

As our Supreme Court has recognized, the General Assembly mandated that the Pennsylvania Commission on Sentencing "adopt guidelines for resentencing that the sentencing court shall consider when resentencing an

- 12 -

offender following revocation of probation." ***Commonwealth v. Simmons***, 262 A.3d 512, 525 (Pa. 2021) (citing 42 Pa.C.S. § 2154.4). The initial Resentencing Guidelines applied to revocations of probation for all offenses committed on or after January 1, 2020, but prior to January 1, 2021. ***See*** 204 Pa. Code § 307.2(b)(1). They require a court to state its reasons for revocation and the sentence imposed, and where the sentence is outside of the guidelines to explain the reason for its deviation. ***See*** 42 Pa.C.S. § 9721(b); 204 Pa. Code § 307.2(a), (d). "For a technical violation[6] resulting in the revocation of an order of probation, the resentencing guidelines shall be the same as the initial sentencing guidelines" set forth in Chapter 303 "with consideration given to any service of the original sentence." 204 Pa. Code § 307.3(a) (footnote added).

In its written opinion, the trial court states that it relied upon the PSI and the probation violation report, as well as the testimony at the hearing, all of which indicated that Crouse "failed the many opportunities that he was provided for treatment and rehabilitation." Trial Court Opinion, 4/24/2025, at 2-4, 6-7. In considering the factors enumerated in section 9721 of the Sentencing Code, the trial court stated that [t]he "record as a whole clearly reflects that periods of incarceration are necessary to not only address the

_____

6 ***See*** 204 Pa. Code § 307.1 (defining, for purposes of the Resentencing Guidelines, a technical violation as the "[f]ailure to comply with terms of an order of probation, other than by the commission of a new offense of which the person is convicted.").

nature of the offenses but [Crouse's] rehabilitative needs given his long and repeated history of failure in the Drug Court Program." *Id.* at 7. The court found this history reflected that his "rehabilitative needs were not being met by periods of probation or supervision outside of total confinement," and the trial court thus fashioned the sentences to address "each of the required considerations under § 9721." *Id.* Finally, the trial court considered that a defendant "is not entitled to a 'volume discount' for multiple offenses." *Id.* (citing *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011)).

Crouse argues that the trial court abused its discretion by running his sentences consecutively to punish him for his violations instead of considering the minor nature of his underlying crimes and his specific character, background, and rehabilitative needs as required by section 9721(b). Crouse's Brief at 24. Crouse argues that the trial court exclusively referenced his noncompliance with the requirements and expectations of Drug Court and otherwise "said little to nothing on the record to demonstrate its consideration of the required factors." *Id.* at 26-27. In particular, he emphasizes the trial court's failure to reference at the hearing the Resentencing Guidelines, the PSI it ordered, and anything pertaining to his personal history and characteristics, including his addiction, mental health diagnoses, program successes, and family supports. *Id.* Because nothing shows that the trial court considered his personal history and circumstances before imposing standard range sentences consecutively, he argues that this Court is

compelled to conclude, as we did in **Commonwealth v. Coulverson**, that the trial court abused its discretion by imposing consecutive non-individualized sentences. **Id.** (citing **Commonwealth v. Coulverson**, 34 A.3d 135, 139 (Pa. Super. 2011)). Crouse does not argue that the trial court applied the Resentencing Guidelines erroneously to arrive at his standard range sentence. Instead, he takes issue with the trial court's decision to impose a sentence at the top of the standard range and for running the sentences consecutively. **See id.** at 28, 32, 34.

We disagree that **Coulverson** compels the outcome Crouse seeks. There, the trial court's lack of elaboration was particularly incongruent with its imposition of a ninety-year aggregate sentence that effectively confined a nineteen-year-old with mental health problems to prison for the rest of his life. **Coulverson**, 34 A.3d at 150. Moreover, as a direct appeal from the defendant's original sentence, **Coulverson** was in a different procedural posture from a case involving a resentence. **See Pasture**, 107 A.3d 21 at 27-28.

Here, the trial court was quite familiar with Crouse's personal situation. It had a unique longitudinal view of Crouse's circumstances after reviewing his case at periodic hearings in Drug Court. This was not Crouse's initial sentence; the trial court was imposing a resentence following Crouse's failure to abide by the conditional order of probation it imposed for Crouse's crimes in the first instance. **See Pasture**, 107 A.3d at 27-28 ("[W]hen a defendant

- 15 -

reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence," the court is "already fully informed as to the facts and circumstances of both the crime and the nature of the defendant.").

At the resentencing hearing underlying this appeal, the trial court had the benefit of the PSI it ordered, and we therefore presume that the trial court was aware of, and meaningfully weighed, the relevant information contained therein regarding Crouse's character and rehabilitative needs. *See Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Although Crouse asserts that this presumption is rebuttable, *see* Crouse's Brief at 29, he offers nothing beyond the brevity of the trial court's commentary at the hearing. This argument does not carry the day, because although the court was not exempted from providing a rationale for its resentencing decision, the law is clear that it need not provide an elaborate explanation or state any magic words. *See Pasture*, 107 A.3d at 27-28; *Devers*, 546 A.2d at 18. Inherent in the trial court's sentence is proof of its consideration of Crouse's individual circumstances: it specifically ordered him to undergo substance abuse and mental health treatment at the state correctional institute. And again, this sentence follows the repeated provision of alternatives to total confinement without success. Notwithstanding the trial court's truncated explanation of its rationale at the hearing, its comments, the sentence it imposed, and the

record as a whole reflects the trial court's consideration of the requisite statutory factors.

Because the resentence is within the statutory limits and sufficiently explained on the record, the court's decision to sentence Crouse to a period of incarceration and to run the sentences consecutively is "peculiarly within the judge's discretion."[7] **Pasture**, 107 A.3d at 27-28. Nothing in the record

---

[7] We observe that the trial court revoked Crouse's probation and resentenced him shortly after Act 44 of 2023 amended 42 Pa.C.S. § 9771(c). **See** Act of Dec. 14, 2023, P.L. 381, No. 44 (effective June 11, 2024). As our discussion above reflects, Crouse makes no argument regarding the propriety of his resentence pursuant to section 9771(c), confining his claim solely to the trial court's alleged failure to adequately consider his rehabilitative needs when running his sentences consecutively.

There is no question Act 44 applies to Crouse's resentencing, including its limitations on a trial court's discretion to sentence a defendant to a period of total confinement following revocation. **See Commonwealth v. Seals**, 353 A.3d 747, 772-73 (Pa. Super. 2026) (en banc) (explaining that, by its plain language, the amendments to section 9771 by Act 44 apply retroactively); 42 Pa.C.S. § 9771(c)(1) (empowering a trial court to resentence a probation violator to a period of incarceration only if certain prerequisites are met); **id.** § 9771(c)(2) (providing graduated maximum allowable sentences for first and second technical violations of probation). Although the record before us strongly suggests the trial court complied with the requirements of Act 44, **see id.** § 9771(c)(1)(iii)(E), (F), and that the length of his incarceration was authorized by statute, **see id.** § 9771(c)(2)(iii), we do not delve into this question further. Neither the parties nor the trial court addressed Act 44 in the proceedings below and no party contends on appeal that the trial court exceeded its authority under section 9771(c). While an appellate court may raise and address the legality of a sentence on appeal sua sponte, we also retain discretion to exercise restraint in doing so to enforce procedural rules and avoid exceeding our role as neutral arbiter. **Commonwealth v. Armolt**, 294 A3d 364, 376 (Pa. 2023). Such restraint is warranted in the instant case where no one raises this as a potential issue and the resolution of it is not readily apparent from the face of the record. **See id.** (declining to exercise

*(Footnote Continued Next Page)*

indicates that the court categorically refused to consider mitigating factors; rather, it simply afforded them less weight than Crouse wanted. This is not an abuse of discretion. *See Commonwealth v. Proctor*, 156 A.3d 261, 274 (Pa. Super. 2017).

As Crouse does not present an argument that the trial court erroneously applied the Resentencing Guidelines, sentenced him outside the guidelines, or that his sentence was clearly unreasonable pursuant to section 9781(c)(2), we must affirm Crouse's sentence. *See* 42 Pa.C.S. § 9781(c).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/09/2026

---

sua sponte review of a constitutional issue insufficiently developed on appeal and not raised below); *In re Adoption of K.M.G.*, 240 A.3d 1218, 1236 (Pa. 2020) (authorizing this Court to conduct sua sponte review of a binary record-based determination but not an inquiry that was more factually involved).